UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BARBARA BECK,

   Plaintiff,           Hon. Janet T. Neff

v.                 Case No. 1:11 CV 735

PLAINWELL, CITY OF, et al.,

   Defendants.
_____/

## REPORT AND RECOMMENDATION

   This matter is before the Court on <u>Defendants' Motion for Summary Judgment</u>. (Dkt. #177). Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that Defendants' motion be **granted** and this action **terminated**.

## BACKGROUND

   Plaintiff initiated the present action on July 18, 2011, against The City of Plainwell and the following individuals: (1) Erik Wilson, Plainwell City Manager; (2) William Bomar, Plainwell Director of Public Safety; (3) Robert Champion, Plainwell City Attorney; (4) John Varley, Detective, Plainwell Department of Public Safety; (5) Ricky Updike, Superintendent, Plainwell Department of Public Works; (6) R. David DeHart, a private citizen; and (7) Barbara Reed, a private citizen. The following allegations are contained in Plaintiff's complaint.

   On the evening of July 18, 2008, Updike filed a complaint with the Plainwell Department of Public Safety alleging that earlier that evening DeHart observed a woman matching Plaintiff's

description "stalking" Updike's residence. Following an investigation, Varley concluded that Plaintiff "was no longer a suspect" in the matter and no criminal charges were ever filed against Plaintiff concerning the incident. Nevertheless, soon thereafter, Updike, with the assistance of Defendant Champion, sought and obtained a Personal Protective Order (PPO) against Plaintiff.

Believing that Updike had intentionally accused her of a crime she did not commit, Plaintiff sought assistance from Wilson, Bomar, and Varley to investigate the matter and provide Plaintiff with appropriate "justice." Plaintiff's attempts to secure an investigation against Updike, however, were unsuccessful. Throughout this process, Updike, with Champion's assistance, obtained several extensions of the aforementioned PPO. Plaintiff was eventually found to have violated the terms of the PPO and sentenced to serve 90 days in jail and pay "thousands of dollars" in attorney fees.

Plaintiff alleges that Defendants violated her First Amendment right to be free from unlawful retaliation and, furthermore, entered into a conspiracy to deny her constitutional right to due process and equal protection of the laws. Plaintiff's claims have since all been dismissed save her allegations of retaliation against Defendants Varley and Bomar, asserted in paragraphs #86 and #102-04, respectively, of her complaint. Defendants Bomar and Varley now move for summary judgment.

## SUMMARY JUDGMENT STANDARD

Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party moving for summary judgment can satisfy its burden by demonstrating "that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case." *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005); *see also*, *Amini*

*v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). The fact that the evidence may be controlled or possessed by the moving party does not change the non-moving party's burden "to show sufficient evidence from which a jury could reasonably find in her favor, again, so long as she has had a full opportunity to conduct discovery." *Minadeo*, 398 F.3d at 761 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986)).

Once the moving party demonstrates that "there is an absence of evidence to support the nonmoving party's case," the non-moving party "must identify specific facts that can be established by admissible evidence, which demonstrate a genuine issue for trial." *Amini*, 440 F.3d at 357 (citing *Anderson*, 477 U.S. at 247-48; *Celotex Corp. v. Catrett*, 477 U.S. at 324). While the Court must view the evidence in the light most favorable to the non-moving party, the party opposing the summary judgment motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Amini*, 440 F.3d at 357. The existence of a mere "scintilla of evidence" in support of the non-moving party's position is insufficient. *Daniels v. Woodside*, 396 F.3d 730, 734-35 (6th Cir. 2005) (quoting *Anderson*, 477 U.S. at 252). The non-moving party "may not rest upon [his] mere allegations," but must instead present "significant probative evidence" establishing that "there is a genuine issue for trial." *Pack v. Damon Corp.*, 434 F.3d 810, 813-14 (6th Cir. 2006) (citations omitted).

Moreover, the non-moving party cannot defeat a properly supported motion for summary judgment by "simply arguing that it relies solely or in part upon credibility determinations." *Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353 (6th Cir. 2004). Rather, the non-moving party "must be able to point to some facts which may or will entitle him to judgment, or refute the proof of the moving party in some material portion, and. . .may not merely recite the incantation, 'Credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof." *Id.* at 353-54. In

sum, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Daniels*, 396 F.3d at 735.

While a moving party without the burden of proof need only show that the opponent cannot sustain his burden at trial, *see Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *Minadeo*, 398 F.3d at 761, a moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). "Where the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000); *Cockrel*, 270 F.2d at 1056 (same). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

**ANALYSIS**

As previously noted, the only claims remaining in this matter are claims of retaliation asserted against Defendants Varley and Bomar. The elements of a First Amendment retaliation claim are well known: (1) Plaintiff was engaged in constitutionally protected conduct, (2) Plaintiff suffered adverse action which would deter a person of "ordinary firmness" from continuing to engage in such protected conduct, and (3) there exists a causal connection between the protected conduct and the adverse action - in other words, the adverse action was motivated at least in part by Plaintiff's protected conduct. *See Wurzelbacher v. Jones-Kelley*, 675 F.3d 580, 583 (6th Cir. 2012).

With respect to the adverse action element, "inconsequential [actions] resulting in nothing more than a de minimis injury" do not constitute actionable adverse action. *Id.* at 584. As for causation, courts recognize that retaliation is "easy to allege" and "can seldom be demonstrated by direct evidence." *Huff v. Rutter*, 2006 WL 2039983 at *7 (W.D. Mich., July 19, 2006) (quoting *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987)). Nonetheless, "bare allegations of malice" are insufficient to state a constitutional claim. *Thaddeus-X*, 175 F.3d at 399 (citations omitted); *see also*, *Skinner v. Bolden*, 89 Fed. Appx. 579, 579-80 (6th Cir., Mar. 12, 2004) ("conclusory allegations of temporal proximity are not sufficient to show a retaliatory motive"); *Desmone v. Adams*, 1998 WL 702342 at *3 (6th Cir., Sep. 23, 1998) ("[a] claim of retaliation must include a chronology of events from which retaliation may plausibly be inferred").

A.     Defendant Bomar

Plaintiff alleges that on October 16, 2008, she requested from the Department of Public Safety a particular accident report. (Dkt. #1 at ¶ 102). According to Plaintiff, Defendant Bomar

informed her by email on October 17, 2008, that while she could obtain a copy of the report in question, she was not permitted to appear at the Department of Public Safety to obtain such. (Dkt. #1 at ¶¶ 102-03). Plaintiff alleges that Bomar threatened her with "arrest and incarceration" if she appeared at the Department of Public Safety. (Dkt. #1 at ¶¶ 103-04). Plaintiff alleges that this threat was expressed in retaliation for her exercising her constitutional rights.

There is no dispute that Plaintiff's request for an accident report was constitutionally protected conduct. Likewise, threats of arrest and incarceration would undoubtedly be sufficient to deter a person of ordinary firmness from persisting in protected conduct. Defendant Bomar, however, has presented unrefuted evidence that his actions were not motivated by Plaintiff's protected conduct, but by altogether different considerations.

In an affidavit submitted in support of his motion for summary judgment, Defendant Bomar acknowledges that he communicated with Plaintiff on October 17, 2008. (Dkt. #178, Exhibit A). Bomar asserts that on that date he sent Plaintiff an email informing her that she could obtain the requested report by submitting a self-addressed stamped envelope along with payment of five dollars. Bomar concedes that he informed Plaintiff that if she appeared in person to obtain the report she "was subject to immediate arrest." Bomar, however, informed Plaintiff of this circumstance not as retaliation for her protected conduct, but because Bomar was aware that Plaintiff's appearance at Plainwell City Hall would violate the terms of a Personal Protective Order (PPO) that had previously been entered against Plaintiff. As Bomar asserts, he was aware of the existence of the PPO when he communicated with Plaintiff on October 17, 2008, and knew that violation of the PPO by, for example, appearing in person at Plainwell City Hall, would subject Plaintiff to "immediate arrest." In sum, Defendant Bomar has presented evidence demonstrating that his challenged actions were not motivated by Plaintiff's

protected conduct, but were instead motivated by the existence of a PPO the terms of which prohibited Plaintiff from appearing in person at Plainwell City Hall. Plaintiff has presented no evidence to the contrary and, in fact, concedes the existence of the PPO in question. Accordingly, the undersigned recommends that Defendant Bomar's motion for summary judgment be granted.

B. Defendant Varley

Plaintiff alleges that on August 12, 2008, she contacted DeHart to question him about the allegation that she had been observed stalking Updike's residence. (Dkt. #1 at ¶¶ 82-84). DeHart became angry and eventually terminated the conversation. (Dkt. #1 at ¶ 84). The following morning, Defendant Varley contacted Plaintiff and asked if she had spoken with DeHart the previous evening. (Dkt. #1 at ¶ 85). When Plaintiff acknowledged that she had spoken with DeHart, Varley informed Plaintiff that "it was unlawful for her to contact a witness." (Dkt. #1 at ¶ 85). Varley further informed Plaintiff that "if she contacted any other party involved [in the matter] he would charge [Plaintiff] with a crime." (Dkt. #1 at ¶ 86). Plaintiff alleges that Varley threatened her in this manner in retaliation for her exercising her constitutional rights. When understood in the proper context, however, Defendant Varley's conduct simply does not constitute unlawful retaliation.

Plaintiff asserts that Defendants Updike and DeHart conspired to falsely charge her with stalking Updike's residence on July 18, 2008. (Dkt. #1 at ¶¶ 27-47). Plaintiff has further asserted that she wanted what she perceived to be criminal activity by Updike and DeHart officially investigated. (Dkt. #1 at ¶¶ 47-71). Plaintiff conceded at her deposition that when she contacted DeHart on August 12, 2008, she accused DeHart of conspiring with Updike to falsely accuse her of a crime. (Dkt. #178,

Exhibit D at 56-57). As Defendant notes, it is illegal under Michigan law to threaten, intimidate, or interfere with a witness to an official investigation. Mich. Comp. Laws § 750.122.

Plaintiff's act of speaking with DeHart constitutes protected First Amendment activity, but only to the extent that she was not acting in violation of § 750.122. *See, e.g., Logan v. Warren County Board of Education*, 549 F.Supp. 145, 149 (S.D. Ga. 1982) ("the proposition that criminal activity is not constitutionally protected conduct requires no citation"). Varley's admonition to Plaintiff that additional communication with potential witnesses (to the investigation that Plaintiff requested be conducted) may subject her to charges of witness tampering simply fails to satisfy the adverse action element. While Varley's comments may have deterred Plaintiff from engaging in unlawful (i.e., unprotected) speech, such cannot be said to deter a person of ordinary firmness from engaging in protected speech. If such were the case, individuals would be able to assert claims of retaliation every time a police officer or other government official offered a warning concerning the potential unlawfulness of certain speech or conduct. Such a result would be absurd. The undersigned concludes, therefore, that Defendant Varley's alleged comments do not satisfy the adverse action element of the retaliation analysis.

Moreover, even if Plaintiff could satisfy the first two elements of the analysis, she cannot prevail on the causation element. Plaintiff conceded at her deposition that Varley did not threaten to arrest her for merely for speaking with DeHart, but instead warned her that she could be subject to arrest for engaging in witness tampering. (Dkt. #178, Exhibit D at 19). As previously noted, to the extent that Plaintiff's communication with DeHart could be construed as witness tampering such is not protected conduct. Thus, Varley's alleged comments were not motivated by Plaintiff's *protected* conduct, but instead were motivated by Plaintiff's potentially *unprotected* conduct. Plaintiff has failed to present any

evidence to the contrary. The Court further notes that Plaintiff has failed to present any evidence which would entitle her to prevail as to this particular element. Accordingly, the undersigned recommends that Defendant Varley's motion for summary judgment be granted.

## **CONCLUSION**

For the reasons articulated herein, the undersigned recommends that <u>Defendants' Motion for Summary Judgment</u>, (Dkt. #177), be **granted** and this action **terminated**. The undersigned further recommends that appeal of this matter would not be taken in good faith. *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997); 28 U.S.C. § 1915(a)(3).

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

Respectfully submitted,

Date: December 10, 2013
/s/ Ellen S. Carmody
ELLEN S. CARMODY
United States Magistrate Judge